*UNITED STATES DISTRICT COURT*
*DISTRICT OF MAINE*

| | |
|---|---|
| *JAMIE A. V.,* | ) |
| | ) |
| *Plaintiff* | ) |
| | ) |
| *v.* | )      *No. 1:19-cv-00386-JDL* |
| | ) |
| *ANDREW M. SAUL,* | ) |
| *Commissioner of Social Security,*[1] | ) |
| | ) |
| *Defendant* | ) |

*REPORT AND RECOMMENDED DECISION*[2]

This Social Security Disability ("SSD") and Supplemental Security Income ("SSI") appeal raises the question of whether the administrative law judge ("ALJ") supportably found the plaintiff capable of performing past relevant work as an automotive detailer and, in the alternative, other work existing in significant numbers in the national economy.  The plaintiff seeks remand on the basis that the ALJ's mental residual functional capacity ("RFC") finding is unsupported by substantial evidence because, despite purporting to give great weight to the opinions of two agency nonexamining consultants, he deviated from their assessments, interpreting raw medical evidence unseen by them.  *See* Statement of Specific Errors ("Statement of Errors") (ECF No. 14) at 1-16. I agree and, accordingly, recommend that the court vacate the commissioner's decision and remand this case for further proceedings consistent herewith.

---

[1] Pursuant to Federal Rule of Civil Procedure 25(d), Andrew M. Saul is substituted as the defendant in this matter.

[2] This action is properly brought under 42 U.S.C. §§ 405(g) and 1383(c)(3).  The commissioner has admitted that the plaintiff has exhausted his administrative remedies.  The case is presented as a request for judicial review by this court pursuant to Local Rule 16.3(a)(2), which requires the plaintiff to file an itemized statement of the specific errors upon which he seeks reversal of the commissioner's decision and to complete and file a fact sheet available at the Clerk's Office, and the commissioner to file a written opposition to the itemized statement.  Oral argument was held before me pursuant to Local Rule 16.3(a)(2)(D), requiring the parties to set forth at oral argument their respective positions with citations to relevant statutes, regulations, case authority, and page references to the administrative record.

Pursuant to the commissioner's sequential evaluation process, 20 C.F.R. §§ 404.1520, 416.920; *Goodermote v. Sec'y of Health & Human Servs.*, 690 F.2d 5, 6 (1st Cir. 1982), the ALJ found, in relevant part, that the plaintiff met the insured status requirements of the Social Security Act through September 30, 2015, Finding 1, Record at 15; that he had the severe impairments of depression, anxiety, a personality disorder, borderline intellectual functioning, and a learning disorder, Finding 3, *id.*; that he had the RFC to perform a full range of work at all exertional levels but with the following nonexertional limitations: he was limited to simple, unskilled work in a low-stress job, defined as one with only occasional decision-making and occasional changes in the work setting, could not work in or among crowds, could not interact with the public as part of his job duties, although this did not preclude contact in passing, could have occasional interaction with coworkers, and could have only occasional supervision, Finding 5, *id.* at 18; that he was capable of performing past relevant work as an automotive detailer, which did not require the performance of work-related activities precluded by his RFC, Finding 6, *id.* at 24; and, in the alternative, considering his age (41 years old, defined as a younger individual, on his amended alleged disability onset date, September 1, 2015), education (limited and able to communicate in English), work experience (transferability of skills immaterial), and RFC, there were jobs existing in significant numbers in the national economy that he could perform, *id.* at 24-25; and that he, therefore, had not been disabled from December 25, 2014, through the date of the decision, February 27, 2019, Finding 7, *id.* at 25-26.[3]  The Appeals Council declined to review the decision, *id.* at 1-3, making the decision the final determination of the commissioner, 20 C.F.R. §§ 404.981, 416.1481; *Dupuis v. Sec'y of Health & Human Servs.*, 869 F.2d 622, 623 (1st Cir. 1989).

---

[3] The ALJ presumably meant to reference September 1, 2015, the plaintiff's amended alleged onset date of disability, rather than December 25, 2014, his original alleged onset date of disability.  *See* Record at 13.  However, nothing turns on the discrepancy.

The standard of review of the commissioner's decision is whether the determination made is supported by substantial evidence.  42 U.S.C. §§ 405(g), 1383(c)(3); *Manso-Pizarro v. Sec'y of Health & Human Servs.*, 76 F.3d 15, 16 (1st Cir. 1996).  In other words, the determination must be supported by such relevant evidence as a reasonable mind might accept as adequate to support the conclusion drawn.  *Richardson v. Perales,* 402 U.S. 389, 401 (1971); *Rodriguez v. Sec'y of Health & Human Servs.*, 647 F.2d 218, 222 (1st Cir. 1981).

The ALJ reached Step 4 of the sequential evaluation process, at which stage the claimant bears the burden of proving inability to return to past relevant work.  20 C.F.R. §§ 404.1520(f), 416.920(f); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).  At this step, the commissioner must make findings of the plaintiff's RFC and the physical and mental demands of past work and determine whether the plaintiff's RFC would permit performance of that work.  20 C.F.R. §§ 404.1520(f), 416.920(f); Social Security Ruling 82-62 ("SSR 82-62"), reprinted in *West's Social Security Reporting Service* Rulings 1975-1982, at 813.

 In the alternative, the ALJ reached Step 5 of the sequential evaluation process, at which stage the burden of proof shifts to the commissioner to show that a claimant can perform work other than his past relevant work.  20 C.F.R. §§ 404.1520(g), 416.920(g); *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Goodermote*, 690 F.2d at 7.  The record must contain substantial evidence in support of the commissioner's findings regarding the plaintiff's RFC to perform such other work.  *Rosado v. Sec'y of Health & Human Servs.*, 807 F.2d 292, 294 (1st Cir. 1986).

## I.  Discussion

In crafting the plaintiff's mental RFC, the ALJ stated that he gave "great weight" to the opinions of agency nonexamining consultants Brian Stahl, Ph.D., (dated April 20, 2017) and David R. Houston, Ph.D., (dated December 26, 2017), but only "limited weight" to (i) an April 2017 opinion of agency examining consultant James Werrbach, Ph.D., (ii) an opinion of Anthony

Podraza, M.S., Ph.D., A.B.P.P., contained in Dr. Podraza's February 2019 report of his neurocognitive examination, that the plaintiff was "not a suitable candidate for competitive employment at this time[,]" and (iii) June 2018 and January 2019 narrative letters submitted by treating source Rebecca Crooker, L.C.P.C.  Record at 22-23; *see also id*. at 110-12, 126-28, 934-37, 1230, 1946, 1967-73.

Drs. Stahl and Houston both concluded that the plaintiff had severe mental impairments of anxiety and depression.  *See id*. at 109, 124.  As the ALJ noted, both also found that he "retain[ed] the ability to understand and remember simple instructions and tasks, but could not handle complex information;" was "able to work in two-hour blocks of time performing simple tasks over the course of a normal workday and workweek;" was "not able to work with the public" but could "work with co-workers and supervisors;" and could "adapt to simple changes." *Id*. at 22 (citations omitted); *see also id*. at 110-12, 126-28.  The ALJ explained that he gave the opinions great weight because, although Drs. Stahl and Houston had not treated or examined the plaintiff, they were agency physicians familiar with the disability program and had "reviewed a large portion of the evidence of record in rendering their opinions and supported their findings with citations to the record." *Id*. at 22.  He added:

> I do acknowledge that substantial additional evidence has been submitted since their evaluations, which is exhibited from 12F to 27F.  These new records do contain a narrative letter from a treating source and a neuropsychological evaluation, both of which support disability, as detailed below.  However, this new evidence supporting disability is inconsistent with the record as a whole, which documents that the [plaintiff] is able to live independently and manage a wide range of daily tasks despite his alleged impairments.  Furthermore, this new evidence shows consistently mild to moderate deficits on objective examination, as detailed above, and thus fail[s] to support a substantial erosion in functioning.  Thus, while I fully considered this substantial new evidence, I nonetheless find the restrictions cited by Drs. Stahl and Houston most supported by the record as a whole.

*Id.*

4

The ALJ described his RFC determination as "supported by the record, when considered as a whole, and especially in light of the inconsistencies between the [plaintiff]'s subjective allegations and his objective presentation in the course of treatment." *Id*. at 24. However, he did not acknowledge that his findings of the plaintiff's severe impairments and his RFC determination deviated from those of Drs. Stahl and Houston.

Whereas Drs. Stahl and Houston found severe impairments of anxiety and depression, the ALJ found additional severe impairments of a personality disorder, borderline intellectual functioning, and a learning disorder. While, at the outset of his RFC discussion, the ALJ noted that the plaintiff had "a history of a personality disorder, with borderline, dependent, melancholic, and avoidant traits[,]" "a longitudinal history of learning deficits that date back to school, with a full-scale I.Q. of 77, in the borderline range[,]" and had "also been diagnosed with a learning disorder, with noted difficulties in reading comprehension, arithmetic, and spelling[,]" propositions for which he cited Exhibit 27, containing the Podraza evaluation, *id*. at 20, 1967-73, he did not explain how, if at all, he took those additional severe impairments into account in crafting his RFC, *see id*. at 20-24.

Further, whereas Drs. Stahl and Houston deemed the plaintiff able to "understand and remember simple instructions and tasks[,]" "work in 2 hour blocks performing simple tasks over the course of a normal workday/workweek[,]" work with co-workers and supervisors but not the public, and adapt to simple or routine changes, *id*. at 110-12, 126-28, the ALJ found that he also required a limitation to low-stress work, defined as entailing only occasional decision-making and occasional changes in the work setting, could not work in or among crowds, or interact with the public as part of his job duties, but was not precluded from contact with the public "in passing[,]"

could have "occasional interaction with co-workers[,]" and could have "only occasional supervision[,]" Finding 5, *id.* at 18.

Plainly, as the plaintiff's counsel observed at oral argument, while the ALJ discounted Dr. Podraza's opinion that the plaintiff was disabled, he expressly adopted three significant diagnoses made by Dr. Podraza and analyzed the substantive significance of the Podraza evaluation; for example, deeming a limitation to simple, unskilled work consistent with the diagnoses of borderline intellectual functioning and a learning disorder. *See id.* at 20-21. He did so without the benefit of interpretation by a mental health expert of results on objective testing by Dr. Podraza, which included "poor performance or deficit on most measures of reasoning, verbal and visuospatial memory, language function, and attention/concentration[,] . . . suggestive of diffuse cerebral dysfunction." *Id.* at 1971.

As the plaintiff's counsel contended at oral argument, this case is materially indistinguishable from *Lacey A. L. v. Saul*, No. 1:19-cv-00126-GZS, 2020 WL 748645 (D. Me. Feb. 14, 2020) (rec. dec., *aff'd* Mar. 3, 2020), in which this court deemed reversal and remand warranted on the basis that the ALJ's mental RFC determination was unsupported by substantial evidence. In *Lacey A. L.*, as here:

1.      The ALJ purported to give great weight to the opinion of an agency nonexamining consultant, in that case also Dr. Stahl, who had not had the benefit of review of later-submitted evidence that included the reports of an independent medical examiner, Craig W. Curtis, M.D., and an independent psychiatric examiner, Jeffrey S. Barkin, M.D., in a separate workers' compensation case. *See Lacey A. L.*, 2020 WL 748645, at *2.

2.      The ALJ rejected all other relevant expert opinions of record, including those of Drs. Curtis and Barkin bearing on the plaintiff's employability, but found severe impairments of

post-traumatic stress disorder, bipolar II disorder, and borderline personality disorder, all of which had been diagnosed by Dr. Curtis and/or Dr. Barkin, in addition to anxiety, one of the only two severe impairments (anxiety and depression) identified by Dr. Stahl. *See id.* at *2-4.[4]

3.　　　The ALJ also deviated in some respects from the only expert RFC assessment of record that he adopted, that of Dr. Stahl, assessing limitations both more restrictive (a ban against tandem or team-oriented work) and less restrictive (an ability to have brief and incidental contact with the general public) than found by Dr. Stahl. *See id.* at *4. In turn, those findings "were neither supported by expert opinion nor a matter of common-sense judgment." *Id.* (citations and internal quotation marks omitted).

4.　　　While the ALJ "explained his derivation of the [claimant]'s mental RFC, his explanation underscore[d] the pitfalls of interpreting raw medical evidence." *Id.* at *5 (citation omitted). He noted that he had taken into account evidence unseen by Dr. Stahl "bearing on the chronicity" of the claimant's mental impairment but "did not explain how he took that chronicity into account in determining her mental RFC." *Id.* (citation and internal quotation marks omitted). He also failed to explain "how, if at all, he took into account any limitations stemming from the mental health impairments he found severe based on evidence unseen by Dr. Stahl." *Id.* Finally, his "reliance on largely normal mental status examinations and activities of daily living did not fill the gap." *Id.* (citation and internal quotation marks omitted).

In this case, as well, the ALJ relied in part on mental status examinations and activities of daily living, and they do not fill the gap. First, as the plaintiff's counsel asserted at oral argument,

---

[4] The commissioner observes that "'a diagnosis . . ., standing alone, does not establish the severity of the disease nor the limitations that result for a particular individual.'" Defendant's Opposition to Plaintiff's Statement of Errors ("Opposition") (ECF No. 18) at 7-8 (quoting *Dowell v. Colvin*, No. 2:13-cv-246-JDL, 2014 WL 3784237, at *3 (D. Me. July 31, 2014)). That is true, insofar as it goes. However, in this case, the ALJ adopted three new severe mental impairments without explaining whether he found any resulting limitations and, if so, how he accounted for them.

the ALJ's reliance on largely normal mental status examinations recorded during non-mental health visits is problematic. *See* Record at 20 (deeming "the [plaintiff]'s presentation in the regular course of primary care treatment records . . . grossly incongruous with his presentation in mental health treatment[,]" during which "he presents reporting far more symptoms"), 21 (concluding that, "[w]hile this objective clinical presentation throughout the period under review occasionally shows some deficits, it generally fails to support a finding of total disability or any limitations beyond those provided in the [RFC] above"). It is not a matter of common-sense judgment that findings recorded during visits not focused on the plaintiff's mental health undercut findings recorded in mental-health-focused visits. Nor is it a common-sense judgment that, while the longitudinal mental status examination evidence, which included records unseen by Drs. Stahl and Houston that reflected a worsening, "show[ed] some deficits, it generally fail[ed] to support a finding of total disability or any limitations beyond those provided in the [RFC] above." *Id.* at 21.[5]

Second, as the plaintiff contends, *see* Statement of Errors at 12-13, the ALJ's reliance on his activities of daily living to support the assessed RFC is problematic. The ALJ concluded that, "[w]hile the [plaintiff] clearly has some intellectual deficits, his present abilities and score in the borderline intelligence range generally support an ability to perform simple, unskilled tasks[,]" Record at 20,[6] and that records documenting no issues visiting or relating to doctors, along with the plaintiff's testimony that he liked to visit antique shops and run errands with his father and was

---

[5] As the ALJ acknowledged, *see* Record at 22, Exhibits 12F to 27F were unseen by either Dr. Stahl or Dr. Houston. Yet, in addition to citing portions of the record available for their review, the ALJ cited portions of Exhibits 15F, 17F, 20F, 23F, and 27F for the proposition that the longitudinal evidence of the plaintiff's objective clinical presentation failed to support limitations beyond those set forth in the ALJ's RFC determination. *See id.* at 21.

[6] The ALJ cited the plaintiff's abilities to read and understand a newspaper or letter, understand highway signs and use a GPS, follow a recipe, read labels, tell time, use a phone book and household appliances, and use a computer, including to play video games and maintain social relationships online. *See* Record at 20.

able to shop and visit neighbors, "fail to support [his] alleged degree of social limitations, with the [RFC] above fully allowing for any social issues, particularly with the public[,]" *id*. at 21.

Yet, the ALJ identifies no expert evidence that a diagnosis of borderline intellectual functioning *supports* an ability to perform simple, unskilled tasks, and the activities on which he relies do not, standing alone, provide substantial evidence of the ability, on a sustained full-time basis, to perform simple unskilled tasks or to engage in work with the stated social limitations, including having contact with the public in passing, occasional interaction with coworkers, and occasional supervision.  *See* Finding 5, *id*. at 18; *Coyne v. Berryhill*, No. 2:16-cv-00536-GZS, 2017 WL 4364184, at *3 (D. Me. Oct. 1, 2017) (rec. dec., *aff'd* Oct. 19, 2017) (ALJ did not make permissible common-sense judgment of claimant's mental RFC when she relied heavily on activities of daily living, including claimant's completion of an online real-estate course and his ability to read, exercise, walk, drive, go out unaccompanied, socialize with friends, and shop, "to conclude that [he] had sufficient capacity to perform simple object-oriented work with limited interactions with others on a sustained full-time basis"); *Bernier v. Colvin*, No. 1:14-cv-29-JHR, 2015 WL 46062, at *4 (D. Me. Jan. 2, 2015) (ALJ "overstepped the boundaries of his competence as a layperson in delineating the [claimant's] capabilities in the area of concentration, persistence, and pace" when, "[e]ven granting that the [claimant's] ability to read, watch television, learn Japanese, and work on an electronics project suggest[ed] some capacity to concentrate and persist, it d[id] not suggest, as a matter of commonsense judgment, that he retained the ability on a full-time basis to handle routine tasks/semiskilled work, occasional decision-making, and occasional workplace changes") (footnote omitted).

At oral argument, counsel for the commissioner asserted that remand is unwarranted because, (i) to the extent that the ALJ construed raw medical evidence, he made a permissible

common-sense judgment, (ii) in any event, he arrived at an RFC determination more favorable to the plaintiff than the evidence would otherwise support, rendering any error harmless, and, (iii) in any event, the plaintiff failed to meet his burden of showing that records unseen by Drs. Stahl and Houston would have altered their opinions in a manner more favorable to him. *See* also Opposition at 4; *Gordils v. Sec'y of Health & Human Servs.*, 921 F.2d 327, 329 (1st Cir. 1990) (Although an administrative law judge is not precluded from "rendering common-sense judgments about functional capacity based on medical findings," she "is not qualified to assess residual functional capacity based on a bare medical record."); *Soto v. Colvin*, No. 2:14-cv-28-JHR, 2015 WL 58401, at *3 (D. Me. Jan. 5, 2015) ("a claimant may not obtain a remand on the basis of an RFC that is more favorable than the evidence would otherwise support"); *O'Bannon v. Colvin*, Civil No. 1:13-cv-207-DBH, 2014 WL 1767128, at *7 (D. Me. Apr. 29, 2014) (a claimant must show "what specific evidence not seen by" agency nonexamining consultants "would necessarily have altered their opinions in a manner favorable to [the claimant]").

For the reasons discussed above, the ALJ's RFC assessment was not the product of a permissible common-sense judgment. Nor was his RFC determination more favorable to the plaintiff than the evidence would otherwise support. At oral argument, counsel for the commissioner argued that this was so because the ALJ's RFC formulation is more restrictive in certain respects than those of Drs. Stahl and Houston. Yet, the ALJ himself determined *sub silentio* that the RFC assessments of Drs. Stahl and Houston were in some respects inadequately restrictive, deviating from them on the basis of his lay interpretation of evidence unseen by them. His RFC finding, hence, cannot fairly be described as more favorable than the evidence would otherwise support. Finally, the plaintiff identified evidence that, in his view, called into question Drs. Stahl's and Houston's conclusions, including the Podraza evaluation. *See* Statement of Errors at 7-16.

At bottom, the ALJ erred in construing evidence unseen by Drs. Stahl and Houston to craft an RFC determination in circumstances in which he neither made a common-sense judgment nor arrived at an RFC finding more favorable than the evidence would otherwise support.  That, in turn, undermined his reliance on the testimony of a vocational expert, at Step 4, that a person with the stated RFC could perform the plaintiff's past relevant work as an auto detailer and, at Step 5, that a person with the stated RFC could perform work existing in significant numbers in the national economy.  *See* Record at 24-25; s*ee also, e.g.*, *Arocho v. Sec'y of Health & Human Servs.*, 670 F.2d 374, 375 (1st Cir. 1982) (responses of a vocational expert are relevant only to the extent offered in response to hypothetical questions that correspond to the medical evidence of record).

## II.  Conclusion

For the foregoing reasons, I recommend that the commissioner's decision be **VACATED** and the case **REMANDED** for proceedings consistent herewith.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which* <u>de</u> <u>novo</u> *review by the district court is sought, together with a supporting memorandum and request for oral argument before the district judge, if any is sought, within fourteen (14) days after being served with a copy thereof.   A responsive memorandum and any request for oral argument before the district judge shall be filed within fourteen (14) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to* <u>de</u> <u>novo</u> *review by the district court and to appeal the district court's order.*

Dated this 1st day of June, 2020.

/s/ John H. Rich III
John H. Rich III
United States Magistrate Judge

11